**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5127-18T1

K.U.,

     Plaintiff-Respondent,

v.

E.M.,

     Defendant-Appellant.

_____

Submitted May 12, 2020 – Decided May 26, 2020

Before Judges Fisher and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1359-19.

Lubiner, Schmidt & Palumbo, attorneys for appellant (Todd David Palumbo and John Evan Jenkins, on the brief).

Respondent has not filed a brief.

PER CURIAM

Plaintiff K.U. (Kevin, a fictitious name) filed this action against his former girlfriend, defendant E.M. (Evelyn, also a fictitious name), under the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35, alleging he was harassed by her communications. At the end of a short hearing at which only the unrepresented parties testified, the judge found Kevin credible, concluded Evelyn's communications were of a harassing nature, and issued a final restraining order (FRO) in Kevin's favor. Evelyn's later reconsideration motion was denied.

Evelyn appeals, arguing that the trial judge erred by failing to determine whether her communications were made with a purpose to harass and by failing to allow her to cross-examine Kevin. We find insufficient merit in these arguments to warrant further discussion in a written opinion, R. 2:11-3(e)(1)(E), and affirm, adding only a few brief comments.

Evelyn, of course, is correct that to find harassment a judge must determine that the harasser acted, in the words of N.J.S.A. 2C:33-4, "with purpose to harass another." See J.D. v. M.D.F., 207 N.J. 458, 477-78 (2011); State v. Burkert, 444 N.J. Super. 591, 600 (App. Div. 2016). It is also true that in his oral decision the judge did not actually say whether Evelyn's communications were made with a purpose to harass Kevin or his current

girlfriend. But, the judge found the communications were harassing and, because the very nature of the communications, which included the sending of what were referred to as "racy confections," were on their face annoying, alarming, and otherwise pointless, we are satisfied the judge implicitly found Evelyn's communications were made with a purpose to harass.

Evelyn also correctly argues due process principles require that judges afford domestic violence litigants with "the opportunity to cross-examine witnesses." J.D., 207 N.J. at 481; see also Peterson v. Peterson, 374 N.J. Super. 116, 124-26 (App. Div. 2005). But, because such matters are speedily adjudicated, domestic violence judges are not required to give any great "leeway to a party whose testimony seems disjointed or irrelevant." J.D., 207 N.J. at 481. Having closely examined the trial transcript, we conclude that the judge provided Evelyn with the opportunity to cross-examine Kevin and that she did, in fact, cross-examine Kevin, albeit briefly.

After Kevin finished testifying, the judge advised Evelyn that she was "under no requirement to say anything" and asked "if [she] would like to respond to [Kevin's] testimony." After Evelyn expressed a desire to respond, the following occurred:

> [EVELYN]: But before I do, I do have a couple of clarifying questions.

3

THE COURT: Questions for [Kevin]?

[EVELYN]: Yes.

THE COURT: Well, you know, it's a little difficult to conduct a cross-examination when it's plaintiff against defendant. Suppose you just tell me what your concerns are.

Evelyn then asked Kevin a few questions.

Evelyn's first question, as the judge correctly held, sought irrelevant information and, so, he did not require a response from Kevin. The judge restated Evelyn's second question for clarity's sake and followed it with a few more questions of his own. After that, Evelyn posed what she described as her "final question" for Kevin. That question prompted discussion between the judge and Evelyn, and Kevin never was asked to give a response; Evelyn did not complain about not getting an answer, and she did not pursue that line of questioning further. The judge then asked "what else[?]" Evelyn said "[t]hat's it in . . . regard to the clarifying questions," and she then gave her own direct testimony. We are satisfied the judge provided Evelyn with the opportunity to cross-examine, which she exercised as fully as she desired.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5127-18T1